IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REHANA ASHRAF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 4145 |
| v. | ) | |
| | ) | |
| CHRISTOPHER HOUSE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Rehana Ashraf filed the present lawsuit alleging claims of age, national origin, and race discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981 against her former employer Defendant Christopher House ("Christopher House"), an Illinois corporation. Before the Court is Christopher House's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Defendant's summary judgment motion as to Ashraf's race and national origin discrimination claims, but denies Defendant's motion as to Ashraf's age discrimination claim.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements, which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d

524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004); *see also Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643 (7th Cir. 2008). Local Rule 56.1(b)(3)(B) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of any additional facts that require the denial of summary judgment. *See Ciomber,* 527 F.3d at 643-44.

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Moreover, the Court may disregard statements and responses that do not properly cite to the record. *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005). With these standards in mind, the Court turns to the relevant facts of this matter.

## II. Relevant Facts

### A. Christopher House

Christopher House is a five-site family resource center that offers comprehensive programming to both children and their parents through child and youth development, teen-

parent support, literacy, counseling, and emergency services. (R. 55-1, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) Christopher House operated a family resource center at 4302 N. Kenmore in Chicago, Illinois – known as the Buena Park facility – through the fall of 2007. (*Id*. ¶ 2.) During the 2004-05 school year, the Buena Park facility had two classrooms. (*Id*. ¶ 3.) As of April 2005, Christopher House's Buena Park facility was staffed by Jennifer Kushto, Site Director; Doreen Herrera, Social Services Worker; Carla Schultz, Master Pre-K Teacher; Brenda Howell, Teacher; Rehana Ashraf, Assistant Teacher; Delores Harris, Teacher; and Gladis Peralta, Assistant Teacher. (*Id.* ¶ 4.) Plaintiff Rehana Ashraf worked at Christopher House from March 1992 until April 27, 2005. (R. 70-1, Pl.'s Rule 56.1 Stmt. Add'l. Facts ¶ 63.) Christopher House hired Jennifer Kushto as the Site Director on February 22, 2005. (*Id*. ¶ 74.) Natalie Lane was the Site Director prior to Kushto. (Def.'s Stmt. Facts ¶ 55.)

**B.     April 27, 2005 Incident**

On April 27, 2005, the mother of a three-year-old child in Rehana Ashraf's classroom complained to Doreen Herrera, Buena Park's Social Services Worker, that her daughter had told her that "Ms. Rehana" grabbed her face and arm the day before when the class had been at the park and left a bruise on the child's arm. (*Id*. ¶ 5.) Although Ashraf admits that a parent made a complaint about her on April 27, 2005, Ashraf disputes that nature of the parent's complaint. (R. 70-1, Pl.'s Resp. to Def.'s Facts, ¶¶ 5, 6.) In any event, Herrera then reported the parent's complaint to Site Director Kushto and Kushto then called Anna Falcon, Human Resources Director for Christopher House, to consult with her about what to do. (Def.'s Stmt. Facts ¶¶ 8, 10.) Also, Kushto, Herrera, and another teacher, Carla Schultz, met with Brenda Howell, the other teacher in Ashraf's classroom. (*Id*. ¶ 11.) Kushto memorialized this meeting in a

3

memorandum that states that Howell corroborated the mother's complaint. (*Id.* ¶ 12.)

Specifically, the memorandum states in pertinent part:

> Brenda Howell was asked if these accusations had occurred. Brenda confirmed that Rehana did indeed grab the child by the arm and by the face, along the jaw line. She also disclosed that the incident occurred while trying to line the children up during a walking trip to Buena Park. Brenda also let us know that Rehana was trying to get the child's attention and in order to do so she grabbed the child's face in order for her to look at Rehana. Rehana then grabbed the child by her arm in order to push her back in line[.]

(Def.'s Stmt. Facts ¶ 12, Ex. 8, 4/27/2005 Memo.)

### C. Ashraf's Suspension and Termination

Mistreatment of children is a violation of Christopher House's "Guidance and Discipline" policies, which states in pertinent part that "Under no circumstances will physical punishment or verbal abuse be acceptable forms of interaction with a child." (*Id.* ¶ 13.) Kushto testified at her deposition that on the day of the incident she decided to suspend Ashraf because she believed that Ashraf had violated Christopher House's Guidance and Discipline Policy. (*Id.* ¶ 20.)[1] Kushto and Diana Wildner, the Associate Director and part of the senior management at Christopher House, met with Ashraf to provide her written notice of the suspension. (*Id.* ¶¶ 21, 22; Pl.'s Stmt. Add'l Facts ¶ 83.) After Kushto provided written notice of the suspension, she escorted Ashraf from the premises. (Def.'s Stmt. Facts ¶¶ 27, 28.)

Although the parties dispute who recommended Ashraf's termination to the Parent Policy

---

[1] Ashraf's response to Defendant's Rule 56.1 Statement of Fact ¶ 20 is an "evasive denial[] that do[es] not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 528 (7th Cir. 2000). Accordingly, the Court admits Defendant's statement as true. *See Raymond v. Ameritech Corp.,* 442 F.3d 600, 608 (7th Cir. 2006); *see also Brengettcy v. Horton,* 423 F.3d 674, 681 (7th Cir. 2005) ("failure to respond by the nonmovant as mandated by the local rules results in an admission").

Group, the Parent Policy Group considered terminating Ashraf's employment at a previously-scheduled April 27, 2005 meeting. (*Id.* ¶¶ 29, 32-34; Pl.'s Stmt. Add'l. Facts ¶ 92.) The Parent Policy Group decided to terminate Ashraf's employment with Christopher House. (Def.'s Stmt. Facts ¶ 34.) The next day, Kushto told Ashraf that Christopher House was terminating her employment and that she would send her a letter shortly thereafter. (*Id.* ¶ 35.) Ashraf, who is Asian and is of Indian decent, was 51 years old when Christopher House terminated her employment. (Pl.'s Stmt. Add'l. Facts ¶ 67.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility

5

of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

Ashraf brings race, national origin, and age discrimination claims in violation of the ADEA, Title VII, and 42 U.S.C. § 1981 under which she may prove intentional discrimination by using either the direct method or indirect method of proof as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *See Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008) (ADEA and Title VII); *Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 695 (7th Cir. 2006) (ADEA, Title VII, and Section 1981). Ashraf maintains that she can establish discrimination under both the direct and indirect methods of proof.

**I.      Direct Method**

Under the direct method of proving intentional discrimination, a plaintiff is required to set forth "direct or circumstantial evidence that the employer's decision to take the adverse job action was motivated by an impermissible purpose." *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 517 F.3d 470, 473 (7th Cir. 2008) (citation omitted). More specifically, "[d]irect evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption" and "[c]ircumstantial evidence of discrimination is evidence which allows the trier of fact to infer intentional discrimination by the decisionmaker." *Nichols v. Southern Ill. Univ. – Edwardsville,* 510 F.3d 772, 781 (7th Cir. 2007) (citation omitted). "[C]ircumstantial evidence must point directly to a discriminatory reason for the termination decision." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir.

6

2006); *see also Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008).

Ashraf presents evidence of comments made by Diana Wildner, the Associate Director of Christopher House, and Jennifer Kushto, the Site Director, as circumstantial evidence under the direct method of proof. Isolated or stray comments are usually insufficient to establish that an employer was motivated by unlawful discrimination under the direct method of proof. *See Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007). Nevertheless, "a particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Id.* at 491; *see also Petts v. Rockledge Furniture, LLC,* 534 F.3d 715, 721 (7th Cir. 2008). Moreover, "statements of a person who lacks the final decision-making authority may be probative of intentional discrimination if that individual exercised a significant degree of influence over the contested decision." *Sun v. Board of Trs. of Univ. of Ill.,* 473 F.3d 799, 813 (7th Cir. 2007).

### A. National Origin and Race Discrimination

First, Ashraf points to "smoking gun statements" – such as Wildner's "disparaging" remarks about Ashraf's traditional Indian dress and food – in support of her national origin and race discrimination claims. Specifically, Ashraf points to Wilder asking Site Director Natalie Lane what Ashraf's traditional dress was called and if it was appropriate to wear at Christopher House. (Pl.s' Stmt. Facts, Ex. 3, Lane Dep., at 51-52, 70-71.) Likewise, Lane testified that Wilder made a comment about oatmeal that Ashraf made for the students and that Wilder thought it smelled horrible. (*Id.*) Ashraf also sets forth Kushto's comments to prove intentional national origin and race discrimination, including her question about how Ashraf would feel if

7

her daughter married someone of a different race. (Pl.'s Stmt. Facts, Ex. 1, Ashraf Dep. at 54-55.) In her deposition, however, Ashraf admits that this question was not discriminatory based on her national origin. (*Id*.) Meanwhile, Ashraf maintains that Kushto's question to another teacher concerning what country Ashraf was from and what language she spoke is direct evidence of her national origin discrimination. (*Id.* at 50.)

Construing these comments and all reasonable inferences in favorable of Ashraf, the Court would be hard-pressed to conclude that these remarks are in reference to Ashraf's termination. *See Hemsworth,* 476 F.3d at 491. Without more, these isolated comments do not raise the inference that Christopher House was motivated to terminate Ashraf's employment based on her national origin or race. *See Petts,* 534 F.3d at 721; *Ptasznik,* 464 F.3d at 695. Put differently, these comments are insufficient to create a triable issue of national origin or race discrimination under the direct method. *See Ptasznik,* 464 F.3d at 695; *see also Lucas v. PyraMax Bank,* 539 F.3d. 661, 667 (7th Cir. 2008) (comments that are not connected to discharge fall into "stray remarks" category).

### B. Age Discrimination

Next, Ashraf maintains that Wildner made comments about Ashraf's age that constitute direct evidence of unlawful discrimination under the ADEA. Again, Ashraf relies upon the deposition testimony of Lane, who served as the Site Director for Christopher House's Buena Park facility from December 14, 2004 until February 11, 2005. (Def.'s Stmt. Facts ¶ 55.) Lane testified that Wildner directed her to observe and assess all of the teachers, including the three oldest teachers at the Buena Park facility – Ashraf, Delores Harris, and Gladis Peralta. (*Id*. ¶ 58; Pl.'s Stmt. Facts ¶ 79.) Further, Lane testified that Wilder asked her to come up with reasons to

8

justify terminating the three older teachers' employment. (Pl.'s Stmt. Facts, Ex. 3, Lane Dep. at 48.) In addition, Lane testified that Wilder constantly questioned her whether she found anything to justify terminating the older teachers at the Buena Park facility. (*Id.* at 48-49.)

Viewing the evidence and all reasonable inferences in favor of Ashraf, Wilder's comments to Lane, namely, that Lane should find reasons to justify terminating the older teachers' employment, is direct evidence of age discrimination. Wilder – who was either the final decision maker or an individual who exercised a significant degree of influence over Ashraf's termination – told the Buena Park facility's Site Director to find something wrong with the older teachers' performances to justify firing these teachers. *See Hemsworth,* 476 F.3d at 491; *Sun,* 473 F.3d at 813. Unlike the comments about Ashraf's clothes or food, these comments point directly to the adverse employment action, namely, terminating the employment of the older employees at Christopher House. Based on Wilder's statements, Ashraf has set forth sufficient evidence raising a genuine issue of material fact that her age motivated Christopher House to terminate her employment. *See Petts,* 534 F.3d at 721; *Ptasznik,* 464 F.3d at 695.

## II. Indirect Method

Although Ashraf has provided direct evidence of age discrimination, she did not present direct evidence of national origin or race discrimination. Therefore, the Court turns to the indirect method of proof for these claims. To establish her discrimination claim under the indirect method, Ashraf has the initial burden of establishing a prima facie case that "(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employers' legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected

9

class were treated more favorably by the employer." *Ptasznik,* 464 F.3d at 696. As the Seventh Circuit has explained in the context of the fourth prima facie element in termination cases, "an inflexible rule requiring plaintiff to point to a similarly situated comparator would automatically doom a suit brought by, for example, any employee who is the sole occupant of a particular job class at her employer." *Pantoja v. American NTN Bearing Mfg. Corp.,* 495 F.3d 840, 846 (7th Cir. 2007). Thus, in the context of termination cases like Ashraf's – where there were only two assistant teachers at the Buena Park facility at the time Christopher House terminated Ashraf's employment– the proper fourth prima facie element is whether Christopher House sought someone to perform the same work after her termination. *See id.*; *see also Duncan v. Fleetwood Motor Homes of Ind., Inc.,* 518 F.3d 486, 491 (7th Cir. 2008).

The Court focuses on the second prima facie element, namely, whether Ashraf was performing her job according to Christopher House's legitimate expectations because it is dispositive. *Atanus,* 520 F.3d at 673 ("Summary judgment is appropriate if the employee fails to establish any of the [] elements of the prima facie case."). The proper inquiry under the second element requires the Court to look at Ashraf's job performance through the eyes of her supervisors at the time of her termination. *See Gates v. Caterpillar, Inc.,* 513 F.3d 680, 689 (7th Cir. 2008); *E.g., Lucas v. PyraMax Bank,* 539 F.3d. 661, 666 (7th Cir. 2008).

Here, evidence in the record reveals that Kushto believed Ashraf had violated Christopher House's Guidance and Discipline Policy on the day of Ashraf's suspension based on Ashraf grabbing a three-year old child by the arm and face. Kushto based her belief on her meeting with Brenda Howell – the other teacher in Ashraf's classroom – who observed the incident involving Ashraf and the child. Based on this information, Kushto and/or Wildner

recommended that Christopher House terminate Ashraf's employment. In short, at the time of Ashraf's termination, Kushto believed that Ashraf had violated a Christopher House policy and following a company's policies is a legitimate job expectation. *See, e.g., Anders v. Waste Mgmt. of Wis.,* 463 F.3d 670, 676 (7th Cir. 2006). Whether Christopher House found Ashraf's performance otherwise satisfactory (*see* Pl.'s Stmt. Facts ¶ 66), does not create a genuine issue of fact concerning Kushto's belief that Ashraf violated Christopher House's Guidance and Discipline Policy on the day of the incident. *See Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 548 (7th Cir. 2008) (employee must meet employer's expectations at time of termination) (collecting cases). Accordingly, Ashraf has failed to satisfy the second prong of her prima facie case of intentional race or national origin discrimination, and thus these claims must fail.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's Motion for Summary Judgment.

**DATED:** October 2, 2008

                                          **ENTERED**

                                          _____
                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**